**REID, MURDOCH & CO. v. H. P. COFFEE CO.**

No. 8333.

District Court, E. D. Missouri, E. D.

Nov. 18, 1929.

Judgment reversed 48 F.(2d) 817.

Fred Gerlach, of Chicago, Ill., and Douglas Robert, of St. Louis, Mo., for plaintiff.

Eilers & Schaumberg, Wm. H. Schaumberg, and Roy M. Eilers, all of St. Louis, Mo., for defendant.

FARIS, District Judge.

This is an action to enjoin the alleged infringement by defendant of plaintiff's registered trade-mark, and to enjoin certain acts of alleged unfair competition on defendant's part.

Both parties are corporations, plaintiff being incorporated under the law of the state of Illinois, and the defendant being a corporation of the state of Missouri.

The decisive facts of the case are few, and, in my opinion, fairly simple. As early as August 13, 1878, plaintiff's predecessor registered its trade-mark for baking powder and cream of tarter. This trade-mark consisted of a tiger's head with the word "Monarch" printed or engraved above said head in large, white, and ornamental letters, and having the words "Baking Powder" in an angular scroll·below the tiger's head.

In 1883, plaintiff's predecessor registered the word "Monarch" similarly printed or ·engraved, which (to quote the language of the registrant) "has generally been used in connection with the head of a lion" as a trade-mark for canned goods, seemingly, · peaches and other preserved fruits of similar sorts.

In 1886, plaintiff's predecessor registered the words "Monarch Mills," printed in large white Gothic type above a lion's head, for the products of its "Coffee and Spice Mills."

Later, and in 1922, plaintiff registered for practically all of its products another trade-mark. These products, then as now, consist of condiments, canned fruits, coffee, tea, canned meats, canned vegetables, · flour, and divers cereals. This last-mentioned trade-mark consisted of the word "Monarch" printed or engraved in a crescent shape, in large black Gothic capitals, above its usual lion's head.

Defendant has never registered the word "Monarch" as a trade-mark. It uses this word now on packaged coffee and on coffee sold in sealed cans, printing the word, or engraving it in either white or black Gothic capitals, so that it appears to simulate the word "Monarch" as used by plaintiff, fairly closely. It has never used either the lion's head or the tiger's head as a part of this insignia.

Defendant's predecessors began business in 1853. In 1886, Henry Petring, one of the original organizers, died. The business was then carried on by two of his sons, one of whom—the elder—died in 1925, and the other, a witness in the case on the trial, retired from the defendant corporation some two years before this action was begun.

From the earliest recollection of the witness last mentioned, which takes the use of the word in controversy back to at least 1884, the predecessors of defendant used the

word "Monarch" to designate coffee sold by defendant and such predecessors.

Another witness, an aged truck driver, recalls the use of the word by defendant's predecessors as early as 1879.

At least two other witnesses, George Petring and Henry Petring, who must have known when the use of the word "Monarch" by defendant on coffee first began, died before this suit was instituted.

Nothing is clearer from the record than that defendant's predecessor sold, in more than a dozen states, including, of course, the state of Missouri, large quantities of coffee branded "Monarch" on the containers, as early as 1897. In this statement I am now leaving out of consideration the evidence as to much earlier use, by the truck driver and by Mr. Walter H. Petring, for the sake, merely, of the argument.

In 1907, defendant began to sell its roasted packaged coffee, contained in paper bags, cardboard cartons, and tin cans, extensively by mail, until now it has a very large business so carried on in many states. Defendant has never advertised extensively, if at all, while, on the other hand, plaintiff has spent, and is now spending, very large sums in advertising its well-known "Monarch" brand of foods, drinks, and condiments.

It is clear that defendant has not, since 1907, at least, used the word "Monarch" to show the origin of its coffees; at least not on all of its twenty-odd brands. It at all times, since 1907, had, as forecast already, other brands, only one of which it designated as its "Monarch" brand. It never, it seems, used the word "Monarch" to designate any other of its goods or groceries, save and except coffee.

Defendant's cans used for the coffee sold by it are, so far as samples in evidence disclose, of a wholly different shape and color from those of plaintiff. This is true, also, of the coffee sold by defendant in paper packages and in cardboard cartons. The printing, save as to the single word "Monarch," is also dissimilar in shape and color, and the word "Petring's" prominently appears on all of defendant's packages.

The evidence disclosed that numerous retailers of defendant's packaged and canned "Monarch" brand of coffee were guilty of palming off on their customers the cheaper "Monarch" coffee of defendant for the dearer product of plaintiff. This these dealers were enabled to do, not by reason of any printed or colored or physical similarity between the respective containers, but wholly by reason of the fact that the packages of both plaintiff and defendant bore the word "Monarch."

As said, defendant has never used the lion's head, nor the tiger's head, while plaintiff has done so practically always.

No connivance between the defendant and the retailers, thus guilty of unfair competition, appeared on the trial. These dealers merely advertised "Monarch" coffee, without specifying, as both the cans and cartons of defendant plainly disclosed, that the coffees offered were defendant's product, and not that of plaintiff. It is clear that buyers were misled, by the acts of the retailers, but not by any affirmative act of defendant, save their insistence upon the use of the word "Monarch" as a brand mark for one of their brands of coffee. Ocular examination of the respective containers of defendant and plaintiff, discloses, I repeat, a total dissimilarity, save for the use of the word "Monarch" on both products. Moreover, defendant discloses, by printed words of sufficient prominence, that the origin of the goods is "Petring's," and not plaintiff's.

I have no trouble, on the bare bones of the record evidence in finding plaintiff entitled to the trade-mark in controversy. But the serious question is whether it has not so far been guilty of laches as to preclude the maintenance of this action. It made some sort of protest to defendant in either the year 1901 or 1908, it is true; but the removal of defendant's office, and consequent loss of its files, and perhaps the death of George Petring, precluded any definite disclosure of the nature or result of such protest, and either twenty years, or twenty-seven years, elapsed after this protest until this action was brought by plaintiff. In the meantime, at least two important witnesses for defendant had died, and many, if not all, of its files and records were lost by the removal of its office.

I conclude that plaintiff has been guilty of laches, which precludes the maintenance of this action. I do not think the fact that defendant's use of the word "Monarch" as a brand or grade mark militates against this view. While the property in the trade-mark is in plaintiff, it ought yet to be barred from suing one, who has used the mark as at least a grade mark, for almost fifty years, perhaps much longer. How much longer, and as to the extent and nature of such use, that is, as to whether as a trade-mark or as a grade mark, prior to the deaths of Henry Petring

and George Petring, the deaths of these witnesses and the loss of records have now prevented defendant from showing.

I think the cases óf Saxlehner v. Eisner, etc., Co., 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60, and the very late case of Ancient, etc., Order of Nobles of Mystic Shrine v. Michaux, 279 U. S. 737, 49 S. Ct. 485, 73 L. Ed. 931, are ample authority for this view.

As indicated already, there is nothing in the application of the doctrine of laches which precludes the conclusion that plaintiff is the owner of the trade-mark, but at the same time refuses to grant relief. In fact, if, as I think, plaintiff has been guilty of laches, the court could, even without at all considering the right to the mark, have so ruled out of hand. For laches will, in a proper case, bar a suit, and will, by the same token, cut off examination of the intrinsic merits of plaintiff's contentions.

██ I think it is clear, however, that, if the facts warrant, plaintiff could yet maintain its action for unfair competition. But on a careful comparison of the containers of both plaintiff and defendant, I am unable to say that there is such similarity, save for the single word "Monarch" printed on both plaintiff's and defendant's containers, as was calculated to deceive even an unwary purchaser. Defendant prints the word "Petring's," on three out of four of the containers offered in evidence, in much larger type and much more prominently than it prints the word "Monarch."

Customers were undoubtedly deceived, it is true, but they were deceived because retailers advertised "Monarch" coffee without specifying whether such coffee was the product of plaintiff or of defendant; in the face of the fact that all of defendant's containers, as I have already said, clearly and prominently disclosed that such coffees were the product of defendant. Moreover, as said already, there is no physical similarity between plaintiff's containers and those of defendant, either in shape, color, or printed matter, the word "Monarch" alone excepted, and for the most part this word is in small type; while the word "Petring's" is in large type on the majority of defendant's cartons, cans, and packages.

I see no reason why, if plaintiff is so advised, it may not proceed against such local dealers as, in this situation, are guilty of unfair competition, although, concededly, that matter is not before me. But I am convinced that equity ought not, under the facts here, to afford relief to the plaintiff as against the defendant, plaintiff's obvious laches considered.

The finding will be for defendant and against plaintiff, and the bill of complaint of plaintiff will be dismissed. An order to this end may be presented for entry accordingly.