## H. P. COFFEE CO. v. REID, MURDOCH & CO.

No. 9396.

Circuit Court of Appeals, Eighth Circuit.

July 15, 1932.

See, also, 48 F.(2d) 817; 48 F.(2d) 815.

Thomas B. Harlan, of St. Louis, Mo. (Roy M. Eilers, of St. Louis, Mo., on the brief), for appellant.

Fred Gerlach, of Chicago, Ill. (Douglas W. Robert, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

Reid, Murdoch & Co. brought suit in the United States District Court for the Eastern District of Missouri against H. P. Coffee Company, for the infringement of its registered trade-mark No. 180558, for the trade-mark "Monarch." The parties will be referred to as they orginally appeared in the District Court. 48 F.(2d) 815.

The District Court held (1) that plaintiff's trade-mark, which was registered about 1886, was good and valid, and that it was entitled thereto; (2) that, although certain retail merchants were guilty of acts of unfair competition in selling defendant's products under the name of Monarch, defendant had not connived with them, and hence was not guilty of infringing plaintiff's trade-mark; and (3) that plaintiff by its laches in not earlier bringing suit for infringement was estopped from complaining of defendant's use of the word "Monarch." The District Court therefore dismissed plaintiff's bill of complaint. On appeal to this court, we held (1) that plaintiff had a good and valid trade-mark; (2) that the defendant was responsible for the acts of unfair competition of the retail merchants selling its products, and hence defendant had infringed plaintiff's trademark; and (3) that, while plaintiff was not entitled to recover damages because of its laches, it was nevertheless entitled to injunctional relief against the continuing wrong in the violation of its trade-mark and of unfair competition. The decree of the lower court was therefore reversed, and the cause remanded; with directions for further proceedings consistent with the opinion of this court. Reid, Murdoch & Co. v. H. P. Coffee Co., 48 F.(2d) 817, 819. The lower court thereupon entered a decree on the mandate of this court, setting aside its former decree, and adjudging that, "Since prior to the year 1880 and up to and including the present time, the plaintiff, Reid, Murdoch & Co. and its predecessors in title have been continuously vested with the exclusive right and title in and to the word symbol 'Monarch' as a trademark for certain foods and food products"; that it is now vested with said right and title

388

to said trade-mark which was duly registered March 4, 1924 under No. 180558, for certain foods and food products, including coffee, and plaintiff is now vested with the entire right, title, and interest in and to said registration and the rights secured thereby; that defendant has since about 1907 used the name "Monarch" on packages containing coffee, and said use has been and is an infringement of the said exclusive rights of plaintiff in and to said trade-mark, and constitutes unfair competition in trade; that an injunction issue, enjoining defendant, its officers, servants, employees, and privies, from further infringement upon the exclusive rights of plaintiff, and especially from employing and using, or displaying, the trade-mark or name "Monarch" upon or in connection with any foods or food products, especially coffee, also from publishing or causing to be published or displayed in any manner price lists, labels, or advertisements, exhibiting the word "Monarch," and from in any other manner trespassing upon plaintiff's rights as the owner of the trade-mark.

Defendant thereupon moved the lower court for a modification of the decree, as not being in accordance with the opinion and mandate of this court, setting out in said motion, among other things, that the decree as entered prohibited defendant from using the word as a grade mark, and prohibited it from selling coffee as Monarch in any trade territory where it had sold coffee prior to the registering of plaintiff's trade-mark. The motion for modification was denied, and defendant has appealed from the decree.

Brushing aside generalities, the specific contentions of defendant are (1) that the decree as entered is broader than and inconsistent with the opinion and mandate of this court, in that this court did not vest Reid, Murdoch & Co. with the exclusive right and title in and to the word "Monarch" throughout the United States; (2) that the defendant should not be enjoined from using the word "Monarch" in connection with the sale of its coffee in bulk; and (3) that the defendant should not be enjoined from selling coffee marked "Monarch" in any state or trade territory where it might be able to establish that it in good faith and unaware of plaintiff's trade-mark first sold its coffee and established a reputation therefor as Monarch coffee before plaintiff entered such trade territory and began selling its Monarch coffee therein.

The question to be determined is whether the decree of the lower court goes beyond the mandate. The proceedings taken must, of course, conform to the mandate of this court, and the opinion of the court is in effect a part of the mandate. Great Northern Ry. Co. v. General Railway Signal Co. (C. C. A.) 57 F.(2d) 457. All questions determined on the appeal became, as to subsequent proceedings in the lower court, the law of the case, and every question of fact before this court and decided by its opinion was conclusively settled for the lower court in further proceedings in this action. Haley v. Kilpatrick (C. C. A.) 104 F. 647; Great Northern Ry. Co. v. Western Union Telegraph Co. (C. C. A.) 174 F. 321. It is therefore necessary to consult the opinion of this court on the first appeal, and also to ascertain the issues and the contentions of the parties. We have already adverted to the general effect of the decision of this court. We held that the defendant had no trade-mark and never had had such a trade-mark in the word "Monarch," but had simply used the word as a grade mark. In the course of the opinion we said: "It appears that, while the defendant made some use of the word 'Monarch' in connection with its coffee, it was not a trade-mark use, but it was used as a grade mark to designate or identify one of its various grades of cheap coffee. Such use of the name would not entitle it to its use as a trade-mark."

As has already been observed, this court held that the plaintiff had a valid trade-mark in the name "Monarch," and that the defendant had infringed the same, and that, although laches prevented recovery of damages, it did not prevent injunctive relief. We held that the use of the word "Monarch" by defendant furnished the means in the hands of retail dealers for fraud and deception in palming off defendant's product for that of the plaintiff.

On the original trial of the action, defendant offered evidence to show that its predecessor had sold coffee in Missouri and a few surrounding states as early as 1897, and asserted as a defense in the suit that it sold coffee in Missouri and the surrounding states before plaintiff sold its products in such territory; and it asserted that under the doctrine announced in Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713, it was entitled to continue the sale of Monarch coffee. The plaintiff, however, introduced testimony showing that as early as 1880 its predecessor was selling Monarch coffee in Missouri and all the surrounding states, and that in 1898 it was sell-

ing said goods in practically every state in the Union, and hence contended that the doctrine of the Hanover Case was not applicable. The lower court did not sustain defendant's contention, and this court adopted the findings of fact by the District Court with respect to the adoption of the trade-mark "Monarch" by plaintiff's predecessor as early as August 13, 1878.

On the first appeal defendant urged that it had acquired territorial rights in the state of Missouri, and this matter was argued in defendant's brief, wherein were cited the same authorities as are now presented. This court, however, did not sustain this defense. The defendant then filed its petition for rehearing, in which it again put forward the contention that it had had the trade-mark on coffee in Missouri and several other states before 1897, and hence should not be enjoined from selling Monarch coffee in that territory. We denied the petition for rehearing, and defendant then filed its petition for writ of certiorari in the Supreme Court of the United States, and in the argument in support of that petition this defense was again urged, but the petition was denied. 284 U. S. 621, 52 St. Ct. 9, 76 L. Ed. ——. While the matter has been made an issue, both in the testimony and briefs of counsel, it does not seem to have been pleaded in defendant's answer as a defense. We are of the view that the defendant is precluded by the decision of this court from again retrying this issue.

It is urged that the decree should have so limited the injunction as to permit defendant's use of the word "Monarch" on bags of fifty pounds or more. Growing out of the use of the word "Monarch" upon such bags arose the practice of certain retail merchants palming off defendant's products as plaintiff's Monarch brand. The record shows that at Pontiac, Ill., a consumer was solicited through advertisements of coffee "Monarch, 45c." When asking for Monarch coffee, the customer was handed a one-pound package of coffee taken from a bulk bag or package, and was told that it was Monarch coffee as advertised. The marking of these bags of coffee by defendant gave rise to the fraud upon the public and the injury to the plaintiff condemned in our former opinion. It is there said: "It is true the defendant had no direct part in these acts of unfair competition. The goods, however, as put out by it bore the name 'Monarch,' and, while it is true the containers bore other distinguishing marks, yet the use of the word 'Monarch' furnished the merchants with the

means or tools of committing a fraud upon the public. The acts of these retail merchants might well have been anticipated by the defendant. These goods were supplied by the defendant for the purpose of being resold on the market, and the use of this word 'Monarch' by it made it possible for the retail merchants to commit a fraud upon the public to the injury of the plaintiff."

In view of this holding, it can scarcely be said that the question now urged is an open one, nor that the decree is in this respect broader than the opinion and mandate of this court. To sustain the contentions of the appellant would amount to a holding that it had a common-law trade-mark, good at least in certain territories, which would be in direct conflict with the opinion of this court. The decree appealed from is therefore affirmed.