**DE PARCQ v. LIGGETT & MYERS TOBACCO CO.**
No. 10319.

Circuit Court of Appeals, Eighth Circuit.
Feb. 20, 1936.

Rehearing Denied March 23, 1936.

SANBORN, Circuit Judge, dissenting.

Robert J. McDonald, of Minneapolis, Minn. (Mortimer H. Boutelle and A. H. David, both of Minneapolis, Minn., on the brief), for appellant.

L. P. McNally, of Minneapolis, Minn., and F. L. Fuller, of New York City (F. H. Stinchfield and Donald A. Holmes, both of Minneapolis, Minn., on the brief), for appellee.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is the second appeal in the above cause to this court. For opinion on the former appeal, see 66 F.(2d) 678.

The action is one brought by De Parcq against Liggett & Myers Tobacco Company to recover damages for personal injuries alleged to have been sustained as a result of the negligent driving of one Thompson with whom De Parcq was riding in an automobile owned by the tobacco company but being used by Thompson, an employee of the company, on the business of the company.

De Parcq will hereafter be called plaintiff and the tobacco company defendant.

On the first trial plaintiff had a verdict. This was set aside on appeal to this court.

On the second trial a verdict was directed for defendant at the close of all the evidence; and the present appeal followed.

On the former appeal this court stated the questions presented to it in the following language [66 F.(2d) 678, 680]: "(1) Was there substantial evidence of negligence? (2) Was there substantial evidence of a waiver of a rule of the defendant forbidding employees to carry passengers as guests in the cars of the employer? and (3) Was the plaintiff precluded from recovering by virtue of the Minnesota Workmen's Compensation Act?"

This court answered all three questions in the negative; and in its opinion said [66 F.(2d) 678, 685]: "A new trial must therefore be granted because of the insufficiency of the evidence as to negligence. On a retrial of the action, the question as to the sufficiency of the evidence to establish a waiver by the defendant of its rule forbidding Thompson to carry passengers in the car furnished him by defendant will likely again be involved, and we shall therefore consider that issue."

On the second trial, the question whether plaintiff was precluded from maintaining the action by virtue of the Minnesota Workmen's Compensation Act (Mason's Minn.St.1927, § 4261 et seq.) was regarded as settled in favor of plaintiff; the other two questions remained in the case.

The trial court, in directing a verdict, said:

"I think this case does present evidence which, if believed by the jury, would be sufficient to support a finding that Thompson was negligent, and that his negligence was the proximate cause of the accident.

"But I do not think there is substantial evidence to support the proposition that the defendant conferred upon Thompson apparent authority to carry passengers. * * *

"It is through the knowledge of Rosenquist that the plaintiff claims knowledge was brought home to the defendant. I do not think the evidence in this case comes anywheres near showing a waiver of the rule by Rosenquist. It is very little, if any, stronger in this case than it was in the case that went to the Circuit Court of Appeals on the appeal from the former trial, and in that case the Circuit Court of Appeals characterized the evidence as far from showing a waiver of the rule, and I therefore direct the jury to return a verdict for the defendant."

In making up the bill of exceptions for the present appeal, all of the evidence pro and con on the question of negligence of Thompson was, by agreement of counsel, omitted, and the certificate of the trial judge attached to the bill of exceptions stated: "It is Further Ordered, that all evidence and testimony introduced at the trial of the above entitled action relating to the issue of defendants' negligence need not be made a part of the Bill of Exceptions herein, and by stipulation and agreement between the parties and with the consent of the Court, all of such evidence bearing upon or relating to the issue of negligence has been omitted for the reason that at the conclusion of the trial the Court held that such evidence made the issue of defendants' negligence one of fact for determination by a jury."

So that the sole question presented to this court on the present appeal (apart from questions relating to the receiving or rejecting of testimony offered) is whether there was substantial evidence that Thompson had authority to make the defendant, his employer, liable to plaintiff for damages caused by the negligence of Thompson.

This is stating the second question above mentioned more broadly, perhaps, than was done on the former appeal, a result made necessary, we think, by the additional evidence introduced on the second trial.

We are met at the outset by the contention of the defendant that the "law of the case" compels us to answer the question in the negative; in other words, that this court on the former appeal held that Thompson had no such authority, and that this holding is binding upon the court on the present appeal.

Whether the doctrine of the "law of the case" was held applicable by the trial court to the record as made upon the second trial may well be doubted. It is not specifically so stated in the trial court's opinion in directing a verdict for defendant; nor is it directly referred to as controlling in the motion by defendant for a directed verdict.

We consider the question, however, inasmuch as it has been argued by counsel on both sides of the case, and since it may have been considered by the court to be in the case, though not directly so stated.

This doctrine of the "law of the case" (with its limitation) has been passed upon

by this court in numerous cases and must be taken as well established.

In the recent case of Claiborne-Reno Co. v. E. I. Du Pont de Nemours & Co., 77 F.(2d) 565, 566, this court, quoting from the earlier case of American Surety Co. v. Bankers', etc., Ass'n (C.C.A.) 67 F.(2d) 803, said: "The phrase 'law of the case' has been employed and applied in many decisions of this and other federal courts. Stated generally, the rule is that, 'where evidence is substantially the same on both trials, questions of law determined on writ of error or appeal are "law of the case," both for trial and appellate court, on second writ of error or appeal.' Pennsylvania Mining Co. v. United Mine Workers of America et al. (C.C.A.8) 28 F.(2d) 851; Thompson v. Maxwell Land-Grant & Railway Co., 168 U.S. 451, 18 S.Ct. 121, 42 L. Ed. 539. This rule has been announced and received adherence in many decisions of this court. Finley v. United Mine Workers, 300 F. 972; Federal Reserve Bank v. Omaha National Bank, 45 F.(2d) 511; Page v. Arkansas Natural Gas Corporation, 53 F.(2d) 27; City and County of Denver v. Denver Tramway Corporation, 23 F.(2d) 287; Aetna Life Ins. Co. v. Wharton, 63 F.(2d) 378; H. P. Coffee Co. v. Reid, Murdoch & Co., 60 F.(2d) 387."

The limitation that the evidence be substantially the same on the two trials is also well established. See Meyer & Chapman State Bank v. First Nat. Bank of Cody, 291 F. 42 (C.C.A.8); Illinois Power & Light Corp. v. Hurley, 49 F.(2d) 681 (C. C.A.8); Page v. Arkansas Natural Gas Corp., 53 F.(2d) 27 (C.C.A.8); General Motors Accep. Corp. v. Mid-West Chevrolet Co. (C.C.A.) 74 F.(2d) 386.

Applying the principles thus stated to the facts in the case at bar, we think that the limitation of the rule is here controlling, especially on the question whether the rule of the company against the carriage of passengers in company automobiles by employees had been waived.

The vital question on both trials was whether there was sufficient evidence to go to the jury on the main question involved. The quantum and character of the proof became of prime importance. Without going into the testimony in detail, it is sufficient to say that on the first trial testimony was introduced as to a few rides in or near Thief River Falls given by Thompson to persons, including plain-

tiff, not employees of the company, which rides were known to Rosenquist, Thompson's superior.

On the second trial, new testimony was given as to very numerous other similar rides.

On the first trial, such rides were short rides about Thief River Falls or in the vicinity thereof. This fact was stressed by this court in its opinion on the former appeal.

On the second trial, new testimony was given of rides not so confined,—rides varying in length from ten to four hundred miles, which could not be characterized as "short rides."

These rides were known to Rosenquist, and, so far as the evidence shows, were acquiesced in by him without any dissent. It was one of the duties of Rosenquist to enforce the rules and instructions of the company in regard to the use of automobiles.

This court held on the former appeal that Rosenquist had power to waive the rule in question in this case.

We think such evidence was sufficient to go to the jury on the question whether the rule of the company against the carriage of passengers had been waived. Refusal to submit such question to the jury was, we think, error.

If the jury had found that the rule of the company had been waived, then that rule dropped out of the case, and the question of implied authority of Thompson to carry passengers became an open one.

In determining this latter question, the cognate question of the scope of Thompson's authority became important; and, in determining this last question, the facts and circumstances surrounding or leading up to the accident became relevant.

In Restatement of the Law, Agency, section 229 reads as follows:

"Sec. 229. Kind of Conduct Within Scope of Employment. (1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

"(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

"(a) Whether or not the act is one commonly done by such servants;

"(b) The time, place and purpose of the act;

"(c) The previous relations between the master and the servant;

"(d) The extent to which the business of the master is apportioned between different servants;

"(e) Whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

"(f) Whether or not the master has reason to expect that such an act will be done;

"(g) The similarity in quality of the act done to the act authorized;

"(h) Whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

"(i) The extent of departure from the normal method of accomplishing an authorized result, and

"(j) Whether or not the act is seriously criminal."

In comment a it is stated: "Since the phrase 'scope of the employment,' is used for the purpose of determining the liability of the master for the conduct of servants, the ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed."

In comment b it is stated: "To be incidental, however, it must be one which is subordinate to or pertinent to an act which the servant is employed to perform. It must be within the ultimate objective of the principal and an act which it is not unlikely that a servant might do."

Section 236 reads as follows:

"Sec. 236. Conduct Actuated by Dual Purpose. An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person.

"Illustrations: * * *

"2. A, servant of P, to accommodate a friend who is riding with him, drives his master's truck at an excessive rate of speed. Such driving is within the scope of employment."

In comment b it is stated: "The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service. * * *"

Among the facts to be considered in connection with the evidence as to the ride in controversy in the case at bar, and as to the scope of Thompson's employment, are: The relationship existing between Thompson and plaintiff and between Thompson and plaintiff's father, the hotel keeper; the fact that part of Thompson's duty on the trip in question was to put up advertising matter; the fact that plaintiff on former similar trips had assisted Thompson in putting up such advertising matter.

It is contended by defendant that plaintiff does not rely upon implied authority in Thompson, and that no such question is in the case; that the sole question touching the authority of Thompson is whether he had apparent authority to invite plaintiff to take the ride which resulted in the accident.

There is no little confusion in the cases, and sometimes in the textbooks, in the use of the terms "implied" authority and "apparent" authority. The term "apparent" authority is sometimes used in a sense broad enough to include "implied" authority. Such, we think, was the use of the word "apparent" authority by both parties in the case at bar in the trial court on both trials. This becomes clear by reference to the pleadings and by the stress which both parties, as well as this court, placed upon the inquiry whether or not the rule of the company had been waived,—a very important inquiry touching the matter of implied authority; but of little importance if apparent authority alone were involved in the case.

■ We think the question of implied authority was in the case and should have been submitted to the jury.

■■ We also think that these same rides given by Thompson to persons other than employees of the company, so far, at least, as known both by Rosenquist and plaintiff, constituted evidence of a holding out by Rosenquist that Thompson had authority to give such rides; and that such holding out clothed Thompson with apparent authority to take people relying thereon on such rides; and that there was substantial evi-

dence tending to show that plaintiff knew of such holding out and relied upon the same, at the time of taking the trip here in controversy; and that it was therefore for the jury to say whether Thompson had apparent authority to take plaintiff on the trip.

In Restatement of the Law, Agency, § 8, the authors state: "Sec. 8. Apparent authority is the power of an apparent agent to affect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestations of consent to such third person that such agent shall act as his agent."

In *comment b* it is stated: "The manifestation that another is to act as agent may be made to the community in general, by advertisements or otherwise. Apparent authority, however, exists only with respect to a person to whom such a manifestation has been made or to whom knowledge of it comes."

*Comment d* states: " 'Apparent authority' is to be distinguished from 'inferred authority,' which indicates authorization created otherwise than by express language and which has no reference to an appearance of authority created by the principal's manifestations directed toward third persons. There may be 'inferred apparent authority.' "

That plaintiff knew of somewhat similar trips taken by others, or by himself, with Thompson, and known to Rosenquist, cannot be doubted under the testimony in the case.

Whether plaintiff relied upon what he knew depends upon circumstantial rather than upon direct testimony.

Here again the surrounding circumstances must be considered; the relationship of the parties; former trips taken by plaintiff and Thompson together; the fact that this was not a case of picking up a stray pedestrian to help him on his way, but of inviting a person to ride which might be of benefit to the company's business.

The fact that plaintiff relied upon the holding out need not be known to Rosenquist. The real questions are whether the holding out was such that an ordinary man might reasonably rely upon it, and whether plaintiff did in fact rely upon it.

These questions of implied authority and of apparent authority, with incidental subordinate questions, we think, were for the jury under proper instructions.

It would unduly extend this opinion to discuss the numerous assignments of error touching the reception and rejection of evidence. The errors, if any, are not likely to arise upon another trial if the questions involved are kept clearly in mind.

It may not be amiss to add, however, that we think it was error to receive the testimony of the witness Mason as to the authority of Rosenquist to waive the rule of the company under the circumstances disclosed.

The Judgment is reversed, with instructions to grant a new trial.

SANBORN, Circuit Judge (dissenting).

If this case had been tried before me in the court below, I am satisfied that I would have directed a verdict for the defendant, and therefore I cannot concur in the opinion of the majority. I am unable to convince myself that a finding that the appellant was a guest passenger of the Liggett & Myers Tobacco Company at the time of the accident could be sustained under the evidence in this case. Certainly, before an employer should be held liable for injuries to the guest passenger of one of its employees, it should be shown that in some way the employer had, either expressly or impliedly, extended to such passenger an invitation to ride in his car. Knowledge of the employer that on previous occasions the employee had carried passengers I think is not enough to clothe such employee with any authority to extend invitations to third persons to ride at the employer's risk. Under the rule which we are establishing, an employer, in order to protect himself from such suits as this, must discharge an employee as soon as he ascertains that the employee is inviting persons to ride with him in the employer's car. If he fails to do that, the question as to whether he has apparently or impliedly authorized his employee to carry passengers at the employer's risk will be a question of fact for a jury.

In my opinion, there is nothing in the record in this case to justify a conclusion that De Parcq, at the time of the accident or at any time prior thereto, ever supposed that he was a guest of the Liggett & Myers Tobacco Company, or that he ever relied upon any apparent authority of Thompson in becoming a passenger in the company's car driven by Thompson. He was, obvi-

ously, merely a guest of Thompson, the employee; and Thompson, and not the company, was responsible for his being in the car and for the injuries which he received. In my judgment, when any one accepts an invitation of a servant to ride in·his master's car, without any invitation from the master and without the master's knowledge or consent, he rides as a passenger at his own risk and that of the servant who invites him, and the master owes him no duty. Every car owner should be accorded the privilege of extending or withholding invitations to ride in his car. He should be permitted to select his own guests and ought not to have guests thrust upon him by his servants, under some doctrine of apparent or implied authority. It is enough that the master is liable to the guest passengers whom he invites and who happen to be injured through his negligence without having the rule of liability extended to cover persons whom he would not have invited and who he does not even know are riding in his car.

I think the judgment should be affirmed.