Norris PRESLEY, Appellant,

v.

COMMERCIAL CREDIT CORPORATION, Appellee.

No. 2877.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 3, 1962.

Decided Feb. 21, 1962.

Charles B. Sullivan, Jr., Washington, D. C., for appellant.

Kenneth Wells Parkinson, Washington, D. C., for appellee.

Before HOOD and QUINN, Associate Judges, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

MYERS, Associate Judge.

Appellant, plaintiff below, alleged that his automobile and certain contents therein had been converted by defendant's agent. At the close of his case, a directed verdict was granted against him on the ground he had failed to make a *prima facie* showing that appellee's servant had been acting within the scope of his employment.

The rule applicable on a motion for a directed verdict is that the evidence must be construed most favorably to the plaintiff, giving him the full effect of every legitimate inference therefrom. If upon the evidence so considered reasonable men might differ, the case must go to the jury.[1]

Appellant testified he owned a 1959 two-door, two-tone Ford which was not financed by defendant. It was taken from its parking place one night and found the next day stripped of various accessories and other personal property within it. A neighbor of the plaintiff testified that one night he looked out his window and saw two men "tinkering" with plaintiff's automobile. One was a tall, thin, bald-headed Caucasian; the other a short, stout Negro. The Caucasian drove plaintiff's car away while the Negro drove the automobile in which both men had arrived, a 1959 Rambler with D. C. license KL–118. Plaintiff's brother testified he owned a 1958 two-door, two-tone Ford financed by defendant; that he was delinquent in his payments; that when he had been delinquent previously he had "had dealings" with a bald-headed Caucasian named "Robinette" who represented defendant; that "Robinette" had driven a 1959 Rambler with D. C. license KL–118 when he had come to see him; and that the day after his brother's car had been taken, his automobile was also missing. Defendant stipulated it employed a Mr. Robinette and owned a 1959 Rambler with D. C. license KL–118.

Appellant's theory of the case was that the defendant's agent had repossessed the wrong car, intending to take away his brother's automobile which was of similar make and design. Viewing the evidence in the light most favorable to the plaintiff, the jury could have found that Robinette, an employee of defendant, had taken the plaintiff's automobile on the night

1. Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 103, 143 F.2d 142; Galt v. Phoenix Indemnity Co., 74 App. D.C. 156, 157, 120 F.2d 723; Safeway Stores v. Gibson, D.C.Mun.App., 118 A.2d 386, aff'd 99 U.S.App.D.C. 111, 237 F.2d 592.

in question. From his visits to plaintiff's brother in connection with the latter's delinquency, they could have reasonably inferred that he had authority to deal with debtors who were behind in their car payments. The record is silent as to whether or not Robinette had authority to actually repossess cars, but express authority is not necessary when the act done by the servant or agent is incidental to authorized conduct and furthers the master's business. A servant or agent is authorized to do anything which is reasonably regarded as incidental to the work specifically directed or which is usually done in connection with such work.[2] It is true that Robinette bore no title in connection with his employment by defendant, but a descriptive title is unimportant when there is a showing of the type of duties that he performed which could reasonably be shown to deal with delinquent car owners.

"Scope and course of employment" means the range or extent of the work to be performed by a servant within the limitation of his authority in furtherance of the master's business. An employer is not liable for an agent's acts unless performed within the scope of employment and for the master's benefit. An act is not within the scope of employment if done for the servant's purposes only. Unless the tort is actuated in part at least by a purpose to serve a master, the master is not liable.[3] To be within the scope of employment, the conduct of the servant must be of the same general nature as that authorized or incidental to the conduct authorized.[4] The liability of employers or masters extends to cases where the servant's tortious or negligent acts are contrary to the given instructions if the servant was acting within the scope of his employment.[5] It is beyond dispute that a corporation may be held liable for tortious acts of its employees when such acts are done within the scope of their employment.[6]

Applying the above legal principles to the testimony in the present case, it seems reasonable that a jury might find that appellee's servant who was seen at the place and drove appellant's car away had some authority to protect the only security for the debt that the master had and to take away any automobile whose owner was delinquent in his payments. The jury could find that in doing so the servant Robinette was acting within the scope of his employment at the time and place and in furtherance of his master's business, even though in performing his duties he made a mistake and took the wrong automobile. In any event, although the evidence as to scope of employment was circumstantial, nevertheless, with reasonable inferences therefrom, the testimony made out a *prima facie* case requiring the defendant to present any evidence on its behalf and submission of the issues of fact to the jury. As the decisions have indicated, unless it was of such a marked and distinctive character, the question of whether the servant was acting within the scope of employment at the time of his alleged tortious act is essentially a question of fact for the jury to determine.[7] If, upon the evidence, reasonable men might differ in resolving the question, the motion should be denied, and this we find to be the case here.

Reversed with directions to grant a new trial.

2. Restatement of the Law of Agency, 2nd ed.. Sec. 229, (comment (a)); DeParcq v. Liggett & Myers Tobacco Co., 8 Cir., 81 F.2d 777.

3. Park Transfer Co. v. Lumbermens Mut. Cas. Co., 79 U.S.App.D.C. 48, 142 F.2d 100.

4. Spinney v. Philadelphia Coke Co., D.C., 158 F.Supp. 43, aff'd 253 F.2d 959.

5. Schweinhaut v. Flaherty, 60 App.D.C. 151, 152, 49 F.2d 533.

6. Axman v. Washington Gas Light Co., 38 App.D.C. 155.

7. Great A. & P. Tea Co. v. Aveilhe, D.C. Mun.App., 116 A.2d 162, 164.