**Tedson Jay MEYERS, Appellant,**

v.

**NATIONAL DETECTIVE AGENCY, INC., Appellee.**

**No. 5725.**

District of Columbia Court of Appeals.

Argued June 22, 1971.

Decided Sept. 28, 1971.

Hal Witt, Washington, D. C., for appellant.

Leo A. Roth, Jr., Washington, D. C., with whom Denver H. Graham, Washington, D. C., was on the brief, for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.* *

** Judge Nebeker did not participate in the decision in this case.

KELLY, Associate Judge:

Upon returning home with his wife[1] at approximately 10:30 p. m. on the evening of January 6, 1966, appellant parked his car in the 1200 block of 28th Street, N.W. An interest in dogs and obedience training led them to approach a white station wagon parked directly across the street from their home to speak to the driver, one of appellee's uniformed security patrol guards, about the German shepherd dog he had in the rear of the wagon. The station wagon bore the markings of the National Detective Agency, Inc., K–9 Division. Appellant and his wife conversed with the guard, one Thomas Picard, from five to ten minutes during which time the dog on two occasions became wildly excited; once when Picard told appellant to put his hand against the car window and see what would happen, and again when some pedestrians passed close to car window. Each time the guard calmed the dog and continued the conversation.

Both appellant and his wife had seen the station wagon in the area regularly and, in addition to the discussion of obedience training, asked Picard questions about how often and at what times he was in the area checking their neighbor's house. Ultimately, Picard, saying "Let me show you how well trained he is", opened the car door and pulled the somewhat reluctant dog from the back to the front seat. The dog then jumped out of the car and bit appellant on the arm.

Pertinent testimony in defense was that appellee had an unwritten company regulation, explained to all employees, that the use of dogs on security patrols was not authorized. Picard, in particular, had been so informed sometime prior to the accident in question after other security guards reported that he had been taking his own dog with him on patrol. Although the station wagon driven by Picard that night had been painted with the legend "K–9 Division" for promotional purposes when the company anticipated activating such a division, that plan had been abandoned because appellee could not find suitable dog handlers.

Picard dislocated his shoulder at the time of the accident when he fell while attempting to restrain the dog. He never returned to work and has since moved from the area. He was not available to testify at trial.[2]

At the close of all the evidence, the court directed a verdict for appellee on the ground that as a matter of law Picard's action in attempting to demonstrate the extent of the dog's training to persons with whom he was engaged in casual conversation was outside the scope of his employment and not in furtherance of his employer's business.[3]

We conclude in light of the evidence of record that appellant was entitled to have his case go to the jury; hence it was error to grant the motion for directed verdict. In reaching our conclusion we of course construe the evidence most favorably to appellant, giving him the benefit of every legitimate inference to be drawn therefrom. Great A & P Tea Co. v. Aveilhe, D.C.Mun.App., 116 A.2d 162 (1955).

■ A master is liable for the negligence of his servant if at the time of the negligent act the latter is acting within the scope of his employment, and this liability applies even in instances where the servant, while disobeying his master's orders injures a third party. Schweinhaut v. Flaherty, 60 App.D.C. 151, 49 F.2d 533,

---

1. The wife, who was named as a party plaintiff in the complaint, has not appealed.

2. The complaint was either voluntarily stayed or dismissed without prejudice as to Picard because he could not be served.

3. The court had denied an identical motion at the close of appellant's case.

cert. denied, 51 S.Ct. 656, 283 U.S. 864, 75 L.Ed. 1468 (1931). *Cf.* Horton v. Jones, 208 Miss. 257, 44 So.2d 397, 15 A.L.R.2d 824 (1950). On the other hand, an act committed by the servant solely for his own purposes is outside the scope of his employment for "[u]nless an assault, or other tort, is actuated in part at least by a purpose to serve a principal, the principal is not liable." M. J. Uline Co. v. Cashdan, 84 U.S.App.D.C. 58, 59, 171 F.2d 132, 133 (1948), *quoting* from Park Transfer Co. v. Lumbermens Mut. Casualty Co., 79 U.S. App.D.C. 48, 142 F.2d 100 (1944). The question then is one of degree, and "[e]ach case must be decided in its own unique factual setting." S. Birch & Sons v. Martin, 17 Alaska 230, 244 F.2d 556, 560 (9th Cir.), cert. denied, 355 U.S. 837, 78 S.Ct. 62, 2 L.Ed.2d 49 (1957).

■ We agree with appellant's contention that there was evidence presented at trial from which a jury could reasonably infer that Picard's actions were within the scope of his employment despite his purported disobedience in using a dog on his job. At the time appellant and his wife encountered him, Picard was on duty, making his rounds in furtherance of his employment, checking a house in the 1200 block of 28th Street, N.W. across the street from their home. Picard was in uniform, wearing a collar emblem which read "K–9", sitting in a parked station wagon bearing appellee's markings and the words "K–9 Division" below. The lettering had been painted on the car for promotional purposes at a time when appellee was planning to activate such a division and had gone to the extent of publicly advertising the use of a K–9 division in its business. There was a German shepherd dog in the back of the station wagon. It is true that the implication stemming from these facts, that Picard was authorized to use a dog while on security patrol, was countered by the testimony of appellee's witnesses that Picard was specifically forbidden to do so. In either event, however, the ultimate question is whether or not Picard was acting in his employer's interest when he took the dog from the car to demonstrate how well trained he was.

It is regrettable that Picard did not testify at trial for "[t]he state of the employee's mind at the time the act is committed is material in determining whether that act is within the scope of his employment." Great A & P Tea Co. v. Aveilhe, *supra*, 116 A.2d at 165. Nevertheless, it is our opinion that from the uncontradicted testimony of appellant and his wife a jury could reasonably infer that Picard was motivated *at least in part* by a desire to further his employer's business when he let the dog out of the car. The offered demonstration could reasonably be construed either as serving solely his own purpose to impress appellant by exhibiting his dog's good training, or as exhibiting a desire to show the quality of appellee's services so as to promote its business with other residents of the neighborhood, or both. And should the jury conclude that the motivation for Picard's action was wholly or partially an intention to promote his employer's interests, then it was an act within the scope of his employment for which the employer may be held liable. M. J. Uline Co. v. Cashdan, *supra*; Schweinhaut v. Flaherty, *supra*; Presley v. Commercial Credit Corp., D.C.Mun.App., 177 A.2d 916 (1962); Great A & P Tea Co. v. Aveilhe, *supra*.

Accordingly, we hold that it was error for the trial court to take the case from the jury and direct a verdict for appellee.[4]

Reversed and remanded for a new trial.

4. Because of our disposition of this case, we find it unnecessary to reach the other points raised on appeal.