Milton WEINBERG, Appellant,

v.

Thomas JOHNSON, Appellee.

No. 84–895.

District of Columbia Court of Appeals.

Argued March 20, 1986.
Decided Dec. 8, 1986.

Raymond L. Poston, Jr., Washington, D.C., for appellant.

Gerald I. Holtz, with whom Harold A. Sakayan, Washington, D.C., was on brief, for appellee.

Before FERREN, TERRY, and ROGERS, Associate Judges.

ROGERS, Associate Judge:

This appeal involves a personal injury action arising out of a shooting of appellee at appellant's laundromat. The facts are set forth in *Johnson v. Weinberg,* 434 A.2d 404 (D.C.1981) (*Johnson I*), where this court reversed the trial court's grant of appellant's motion for a directed verdict at the close of appellee's case, and remanded the case for a new trial. At the second trial, a jury found for appellee, awarding $800,000 in compensatory damages. Judge Taylor denied appellant's motion for a new trial on liability, but granted a new trial on damages. At the third trial, the jury awarded appellee $2,000,000 in compensatory damages, and Judge Riley denied appellant's motion for judgment notwithstanding the verdict and for a new trial on liability and damages.[1] Finding no error by Judge

---

1. By filing a timely appeal from Judge Riley's order at the third trial, D.C.C.A. R. 4–II(1), now Rule 4 (effective Jan. 1, 1985), appellant has preserved the right to appeal on grounds of error by Judge Taylor at the second trial. *District of Columbia v. Davis,* 386 A.2d 1195, 1198–

Taylor in denying appellant's motion for directed verdict, his requested jury instructions on the scope of employment, and his motion for a new trial on liability, and no error by Judge Riley in denying his motion for a new trial on the grounds the verdict was excessive, we affirm.[2]

## I. *Directed Verdict*

■ Appellant contends there was no evidence at the second trial from which the jury could find that there was an employer/employee relationship between himself and Ms. Schneider, and thus between himself and Boyd, and further that there was no evidence from which the jury could find the shooting occurred within the scope of Boyd's employment. Appellant argues, therefore, that Judge Taylor erred in failing to direct a verdict in his favor at the close of appellee's evidence and again at the close of all the evidence.

The same issues were submitted to the trial court in the first trial and to this court in the first appeal. *See Johnson I, supra,* 434 A.2d at 407. The first trial judge (Judge McArdle) concluded at the close of the plaintiff-appellee's case "there was a master/servant relationship, but held as a matter of law, on the evidence adduced, no reasonable mind could conclude that when the shooting occurred, Boyd was acting within the scope of his employment." *Id.* at 408. In *Johnson I* this court affirmed Judge McArdle's ruling on the master/servant relationship, but reversed on the issue of scope of employment, holding that this was a question for the jury. Accordingly, the "law of the case" doctrine is dispositive of these issues. That doctrine bars a trial court from reconsidering the same question of law that was submitted to and adjudicated by another court of coordinate jurisdiction

when (1) the motion under consideration is substantially similar to the one already raised before, and considered by, the first court; (2) the first court's ruling is "sufficiently 'final' "; and (3) the prior ruling is not "clearly erroneous in light of newly presented facts or a change in substantive law."

*Tompkins v. Washington Hospital Center,* 433 A.2d 1093, 1098 (D.C.1981) (quoting *Kritsidimas v. Sheskin,* 411 A.2d 370, 371–72 (D.C.1980)). After *Johnson I,* Judge Taylor had to present both issues to the jury since none of the exceptions to the doctrine were applicable. *See Minick v. United States,* 506 A.2d 1115, 1116–17 (D.C.1986).

### A. *Master/Servant Relationship*

■ Appellant argues there were insufficient facts at the second trial to establish a jury question on his work relationship with Boyd. Since the law of the case doctrine is designed to "dispose of cases efficiently by discouraging 'judge-shopping' and multiple attempts to prevail on a single question," *Tompkins, supra,* 433 A.2d at 1098; *Kritsidimas, supra,* 411 A.2d at 371, it is properly applied here. Application of this doctrine does not produce, as appellant maintains, a result that is clearly erroneous in light of changes in substantive law. Since the first trial in 1981, this court has had occasion to consider the proof necessary to establish the existence of the master/servant relationship,[3] and has continued to analyze it in accordance with the guidelines set forth in *LeGrand v. Insurance Company of North America,* 241 A.2d 734 (D.C.1968). Evidence was offered at the second trial relating to these guidelines, and in addition, appellant stated in his deposition that he had "control over everything" in the laun-

---

99 (D.C.1978). *Cf. Howard University v. Pobbi-Asamani,* 488 A.2d 1350, 1353 (D.C.1985) (at least one notice of appeal had to be filed within 30 days after the entry of judgment).

**2.** Appellant's other claims of error are meritless. *See infra* notes 4, 6 & 13.

**3.** *Giles v. Shell Oil Corporation,* 487 A.2d 610 (D.C.1985); *Safeway Stores v. Kelly,* 448 A.2d 856 (D.C.1982).

dromat. We find no error by Judge Taylor in denying the motion for a directed verdict in view of the evidence regarding Ms. Schneider's role as manager in the operation of the laundromat.[4]

### B. *Scope of Employment*

Appellant also argues Judge Taylor erred in failing to direct a verdict in his behalf on the ground that the shooting was not within Boyd's scope of employment. He maintains the law of the case doctrine does not control because there has been a substantive change in the law as set forth in *Boykin v. District of Columbia,* 484 A.2d 560 (D.C.1984).

The doctrine of *respondeat superior* is a doctrine of vicarious liability which imposes liability on employers for the torts committed by their employees within the scope of their employment. *District of Columbia v. Coron,* 515 A.2d 435, 437–38 (D.C.1986); *Boykin, supra,* 484 A.2d at 561–62; *Penn Central Transportation Co. v. Reddick,* 398 A.2d 27, 29 (D.C.1979). Where the employee's action involves an intentional tort which is incidental to the conduct authorized, the meaning of "scope of employment" is unclear. The idea behind *respondeat superior* is to subject an employer to liability for "whatever is done by the employee in virtue of his employment and in furtherance of its ends." *Penn Central Transportation Co. v. Reddick, supra,* 398 A.2d at 29. The employer, therefore, is not to be held liable for "willful acts, intended by the agent only to further his own interest, not done for the [employer] at all." *Id.* at 31 (quoting *Nelson v. American-West African Line,* 86 F.2d 730, 731 (2d Cir. 1936), *cert. denied,* 300 U.S. 665, 57 S.Ct. 509, 81 L.Ed. 873 (1937)); *accord, Grimes*

v. *B.F. Saul Co.,* 60 App.D.C. 47, 47 F.2d 409 (1931). The employer does not avoid liability for the employee's intentional torts, however, if the tort is commited partially because of a personal motive, such as revenge, as long as "the employee [is] actuated, at least in part, by a desire to serve his principal's interest." *Jordan v. Medley,* 228 U.S.App.D.C. 425, 428, 711 F.2d 211, 214 (1983); RESTATEMENT (SECOND) OF AGENCY § 245 comment f (1958).

In *Johnson I, supra,* the court stated:

Boyd was employed to clean the laundromat. In addition to his regular duties, in the interest of his employer, when all of the washing machines were full he would remove clothes from the machines as they finished washing, so that empty machines would be available for other patrons. This service enhanced customer relations, but also placed Boyd in a position where it would be anticipated that problems of the nature described here could arise. If a patron was unable to locate his or her laundry, once having deposited it, it seems likely that Boyd would be confronted in an effort to resolve the matter. 'Whether the assault ... was the outgrowth of a job-related controversy or simply a personal adventure of ... [Boyd's], was a question for the jury.'

434 A.2d at 408–09 (footnote omitted) (quoting *Lyon v. Carey,* 174 U.S.App.D.C. 422, 424, 533 F.2d 649, 651 (1976)).

The questions for the jury were whether the shooting occurred in the course of Boyd's performance of duty or after the job-related transaction was completed, and whether the shooting involved no more than Boyd's use of a "job-related situation"

---

4. We find meritless appellant's claim that reversible error occurred when Judge Taylor refused to give a requested instruction outlining the various factors the jury could consider in determining whether Ms. Schneider was an employee or an independent contractor. Judge Taylor instructed the jury:

An independent contractor is one who engages in independent employment and makes a contract to do a piece of work according to

his own methods and without being subject to the control of the person who hires him, except as to the results of the work.

This instruction fully informed the jury of the relevant point of law albeit in a more general form than appellant requested. *Mark Keshishian & Sons v. Washington Square,* 414 A.2d 834, 841 (D.C.1980); *Wingfield v. Peoples Drug Store,* 379 A.2d 685, 689 (D.C.1977); *Evans v. Capital Transit Co.,* 39 A.2d 869, 871 (D.C.1944).

as an opportunity to pursue his own "personal adventure." The holding in *Johnson I* that these are questions for the jury is not affected by *Boykin, supra,* 484 A.2d 560.

In *Boykin,* a coordinator of an educational program for blind and deaf students took one of the students for a walk, ostensibly to train her to avoid walking into obstacles, and sexually assaulted her in the school cafeteria. *Id.* at 561. The coordinator was not performing any of his teaching responsibilities at any time during the encounter with the student. In observing that while "Boyd's walks with the student afforded him the *opportunity* to pursue his personal adventure," *id.* at 563 (emphasis in original), the court affirmed the grant of summary judgment:

> [T]he sexual attack ... was unprovoked. It certainly was not a direct outgrowth of Boyd's instructions or job assignment, nor was it an integral part of the school's activities, interests or objectives. Boyd's assault was in no degree committed to serve the school's interest, but rather appears to have been done solely for the accomplishment of Boyd's independent,

malicious, mischievous and selfish purposes.

*Id.* at 562.

■■■■ *Boykin* relied on the principles of *respondeat superior* set forth in *Penn Central Transportation Co. v. Reddick, supra,* 398 A.2d at 31. *Boykin, supra,* 484 A.2d at 561–62. Thus, it does not establish a substantive change in the law.[5] Significantly for our purposes, *Boykin* pointed out that *Johnson I* did not substitute foreseeability for intent but assumed that where the employee is in the course of performing job duties, the employee is presumed to be intending, at least in part, to further the employer's interests. *Id.* at 563 n. 2. Accordingly, since the propriety of submitting the question of the scope of Boyd's employment to the jury was not clearly erroneous in light of new facts or new law, the doctrine of "law of the case" controls our resolution of this issue.[6]

## II. *Jury Instruction: Scope of Employment*

Appellant also contends Judge Taylor erred in instructing the jury that Boyd was acting within the scope of his employment if the shooting was either done, at least in

---

**5.** Nor is the holding in *Johnson I* undermined by *Jordan v. Medley, supra,* 228 U.S.App.D.C. 425, 711 F.2d 211. The Court of Appeals for the District of Columbia Circuit observed

> The D.C. Court's most recent case, *Johnson [I],* ... contains language that seems more compatible with an approach that would substitute foreseeability for intent to further the employer's business; but that is arguably inconsistent with other language of the opinion and unquestionably inconsistent with the opinion's strong reliance upon our decisions in *Lyons v. Carey* and *International Distributing Corp. v. American District Telegraph Co., supra* [186 U.S.App.D.C. 305, 569 F.2d 136 (1977)].... [U]nder D.C. law foreseeability must be combined with a purpose to further the employer's interest.

*Id.* at 428, 711 F.2d at 214 (footnotes omitted) (quoting *Hoston v. Silbert,* 220 U.S.App.D.C. 361, 681 F.2d 876 (1982)). *Jordan v. Medley* is not binding on this court. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

**6.** We find meritless appellant's claims that Judge Taylor should not have allowed appellee's

mother and girlfriend to testify, and should have allowed Bennett and Elizabeth Carrington to testify. Appellant was informed by letter dated December 13, 1982 from appellee's counsel that appellee planned to call a number of persons as witnesses at the third trial, including appellee's mother and girlfriend. Since the trial began in May 1983, appellant had approximately six months' advance notice of these witnesses. Appellant does not claim any prejudice by virtue of the omission of these witnesses' names in answers to his interrogatories. Nor does he allege that he could not obtain pertinent information, such as addresses, about the witnesses. Thus, assuming the "informal" letter disclosure failed to comply with Super.Ct.Civ.R. 26(f)(1), the violation was harmless since appellant had notice and suffered no prejudice. In contrast, appellant never notified appellee that he intended to call the Carringtons as witnesses, despite appellee's request for such information in Interrogatory 25 requesting "the names and addresses of all persons known to you or your representatives not heretofore mentioned having any personal knowledge of material facts regarding the occurrence giving rise to this suit."

**990**

part, to serve or further the interests of the employer *or* was done as the outgrowth of a job-related controversy. Appellant had requested an instruction explaining that three elements had to be present for an intentional tort to be within the scope of employment: first, the tort must occur in a job where a confrontation with a customer or third party can be expected; second, the controversy or the assault must arise out of some provocation and some job-related argument or controversy; and third, the employee must be acting in furtherance or at least partially in the furtherance of the employer's business. Judge Taylor declined to instruct on the second and third elements except in the alternative, commenting that *Johnson I* did not require it and that appellant had not objected to the

instruction given at the first trial which did not include both elements.

■ As stated in Part I, *supra,* for an employer to be held vicariously liable for the intentional tort of a servant, the tortious act must occur within the scope of employment. The tort must be actuated, at least in part, by a purpose to further the master's business [7] and not be unexpected in view of the servant's duties.[8] The first criterion is often called "intent" or "purpose" and excludes from the scope of employment all actions committed "solely for [the servant's] own purposes." [9] The latter criterion is loosely called "foreseeability" and implies that the tortious act must be incidental to conduct the employer has authorized.[10]

■ Judge Taylor addressed both criteria in her instructions to the jury.[11] The

7. *Meyers v. National Detective Agency,* 281 A.2d 435, 437 (D.C.1971).

8. *Penn Central Transportation Co. v. Reddick, supra,* 398 A.2d at 30.

9. *Meyers, supra,* 281 A.2d at 437. Recently we have said the question is whether the servant's conduct was " 'either wholly or partially in furtherance of the [master's] business' " or "was done 'solely for the accomplishment of the independent malicious or mischievous purpose of the servant.' " *Boykin, supra,* 484 A.2d at 562 (quoting *Penn Central Transportation Co. v. Reddick, supra,* 398 A.2d at 32).

10. *Jordan v. Medley, supra,* 228 U.S.App.D.C. at 427–28, 711 F.2d at 213–14 (quoting *Presley v. Commercial Credit Corp.,* 177 A.2d 916, 918 (D.C.1982)).

11. The judge instructed the jury:

That next question, of course, is whether the wrongful act of Mr. Boyd, whom you have—we will assume for this purpose have just found was indirectly employed by Mr. Weinberg, whether the wrongful actions of Mr. Boyd were committed while Mr. Boyd was acting within the *scope* of his employment. Mr. Weinberg, of course, denied that Mr. Boyd was acting in the scope of his employment when he shot Mr. Johnson. Once again, therefore, you are the ones who must decide.

Now what do we mean by within the scope of his employment? It does not mean that the employer is responsible merely because the employee was employed generally by the employer. It doesn't mean that he is responsible

merely because the accident happened during working hours. It doesn't mean that he is responsible merely because the incident took place on the premises, in the laundromat, or while the employee was doing things that might have involved Mr. Weinberg's property or equipment. *It means instead that the employee must be serving or furthering a business interest of his employer when he takes the action in question. The question is whether the employee at the time of the incident had any business connected reason for his conduct.*

In other words, to the extent relevant here an act is within the scope of employment [1a] if it is done at least in part to serve or to further the interest of the employer *or* [1b] if it is the outgrowth of a job-related controversy. [2] But there is an additional element in this case and a very important one and we must deal with it. And that is the particular act in question here involved the intentional use of force. Where that is the case, where force is intentionally used by an employee against some other person, then the act is only considered to be within the scope of employment if the use of force was not unexpectable by the employer.

In short, Mr. Weinberg would be liable for the harm done by Mr. Boyd to Mr. Johnson [1] if he shot Mr. Johnson in connection with his employment *and* [2] if the shooting was not unexpectable in view of Mr. Boyd's duty, even though the shooting was not authorized. In deciding whether the shooting here occurred within the scope of Mr. Boyd's employment you should look at the nature of his job, whether the shooting [1a] occurred while Mr. Boyd was furthering Mr. Weinberg's business

judge properly instructed on foreseeability in part [2] of her instruction. *Supra* note 11. *See* RESTATEMENT (SECOND) OF AGENCY §§ 228(1)(d), at 245 (1958). In part [1a] of the instruction, the judge correctly instructed that the jury must find the servant's tortious act was intended, at least in part, to further the master's business. *Supra* note 11. The only issue is whether inclusion of alternative [1b]—that the shooting must be "the outgrowth of a job-related controversy"—permitted the jury to find liability based on a more attenuated relationship between the shooting and the master's business than the relationship implied by the first formulation.

"[T]he trial court's charge 'is not to be tested in isolated segments'; the question 'is whether the charge as a whole was fair and adequate.'" *Sinai v. Polinger Company*, 498 A.2d 520, 530 n. 17 (D.C.1985) (quoting *District of Columbia v. Barnard*, 144 A.2d 418, 420 (D.C.Mun.App.1958) and citing *Coleman v. Chudnow*, 35 A.2d 925, 926 (D.C.1944)). Viewing the instructions as a whole, the jury would understand that it must find the shooting was intended, at least in part, to further the master's business, and not solely the servant's personal agenda. The judge stated unequivocally that "the employee must be serving or furthering a business interest" and that the employee must have a "business connected reason for his conduct." Thus, when the judge used the word "or" in elaborating on that concept, she effectively communicated that "job-related controversy" and "business-related controversy" were merely another way of describing a furtherance of the employer's business. Even focusing, albeit improperly, on the alternative formulation in isolation, *Sinai v. Polinger Company*, *supra*, 498 A.2d at 530, the instruction contains no error.

The case law makes clear that the test for scope of employment is an objective one, based on all the facts and circumstances. As the law has evolved, the intent or purpose criterion has become broad enough to embrace an intentional tort arising out of any dispute that "was originally undertaken on the employer's behalf." *International Distributing Corp. v. American District Telegraph Co.*, 186 U.S.App.D.C. 305, 308, 569 F.2d 136, 139 (1977) (emphasis in original omitted) (citing *Lyon v. Carey*, *supra*, 174 U.S.App.D.C. at 424, 533 F.2d at 651). Indeed, "[t]he present trend is to extend liability for intentional torts to situations where the employer provides a 'peculiar opportunity and ... incentive for such loss of temper,' ... as where an argument is likely by virtue of the servant's duties, and the conduct is wholly or partially in furtherance of the master's business." *Penn Central Transportation Co. v. Reddick*, *supra*, 398 A.2d at 31 (quoting W. PROSSER, LAW OF TORTS § 70 at 466 (4th ed. 1971)); *accord*, *Lyon v. Carey*, *supra*, 174 U.S.App.D.C. at 425, 533 F.2d at 652 (trucking company liable for delivery person's sexual assault on customer after argument over payment by personal check); *Dilli v. Johnson*, 71 App.D.C. 139, 140, 107 F.2d 669, 670 (1939) (restaurant owner liable for manager's assault while responding to patron's complaint). Hence, in cases concerning intentional torts committed during a servant's dispute with a customer, the courts of this jurisdiction have said that such a "job-related controversy" is a sufficient basis for the jury to find that the tort itself—if foreseeable under the circumstances—came within the scope of employment. *Lyon v. Carey*, *supra*, 174 U.S.App. D.C. at 424, 533 F.2d at 651 (quoted in *Johnson I*, at 409 and in *Penn Central Transportation Co. v. Reddick*, *supra*, 398 A.2d at 30). *Johnson I* correctly suggested that when an intentional tort is "the outgrowth of a job-related controversy," the intent or purpose criterion is satisfied, but that the employer can only be held

---

*or* [1b] grew out of a business-related controversy, as we have talked about those things; [1] whether the reasons for the shooting were personal in nature and wholly unrelated to

Mr. Boyd's employment *and* [2] whether the shooting was totally unprovoked, the kind of act that Mr. Weinberg could not have expected. [Emphasis and numbering added.]

liable if the particular tortious act also satisfies the foreseeability requirement. 434 A.2d at 408. Thus, when a servant commits a tort during a dispute over the conduct of the employer's business, the employer will be able to avoid liability only if the jury finds the tort could not be expected under the circumstances, not because the dispute out of which it arose was insufficiently related to the business.

Judge Taylor's instructions appropriately provided alternative definitions of intent to serve the master, coupled with the necessary limitation of foreseeability. The first definition (part 1a) tracks the "intent" or "purpose" language traditionally used, and is literally correct. Because it is difficult, if not impossible, however, to believe shooting a customer could be intended to further the interest of the employer unless a robbery or a burglary is involved, the alternative, "job-related controversy" criterion (part 1b) provided a useful clarification of the intent criterion for the instant case. It also indicated that the intent criterion focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that "was originally undertaken on the employer's behalf." *International Distributing Corp. v. American District Telegraph Co., supra,* 186 U.S.App.D.C. at 308, 569 F.2d at 139 (emphasis in original omitted).

Clearly, the dispute over appellee's shirts that led to the shooting in this case can be characterized as one that originally was undertaken on behalf of the employer, for whom Boyd tended the laundry machines and, consequently, dealt with customers. In this respect, the instant case is indistinguishable from *Lyon v. Carey* and *Dilli v. Johnson. Boykin* is distinguishable, since it was solely a "personal adventure," 484 A.2d at 563, that did not arise out of a

dispute over the conduct of his employer's business.[12] *Accord, Grimes v. B.F. Saul Co.,* 60 App.D.C. 47, 47 F.2d 409 (1931) (apartment building owner not liable for attempted rape of tenant by employee hired to inspect building for needed repairs); *Bozarth v. Harper Creek Board of Education,* 94 Mich.App. 351, 355, 288 N.W.2d 424, 426 (1979) (fact that "employment situation may offer an opportunity for tortious activity" does not bring teacher's sexual assault on student within scope of teacher's employment). Accordingly, we conclude that Judge Taylor's instruction as to purpose, in the disjunctive, did not imply that the jurors could find liability attributable to a job-related controversy if they did not believe the dispute over the shirts was actuated, at least in part, by an intent to further the employer's business. Based on the evidence, it is unlikely the jury found that the dispute over the shirts (in contrast with the shooting) was not an outgrowth of the employee's intention to defend and thus further the employer's business practices, which is all the intention criterion requires. In any event, the case law deems a job-related controversy to be a sufficient predicate for the intent or purpose criterion and then shifts the jury's focus to the foreseeability of a particular, outrageous tort once that dispute nexus is established. Therefore, even if the jury did not focus on whether the dispute over the shirts was intended to serve the employer, its finding of a job-related controversy satisfied the intent or purpose criterion. We find no error in the instructions to the jury.

### III. *Denial of New Trial on Liability*

 Appellant further contends Judge Taylor erred in granting a new trial on damages alone because "the mitigating factors in the case were removed but the inflammatory aspects remained," and the

---

12. In *Boykin* the court commented that *Johnson I* approaches the outer limits of the liability that may be imposed under *respondeat superior* because

the fact that the servant acts in an outrageous manner or inflicts a punishment out of all

proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the act.

*Id.* at 563 (quoting Restatement (Second) of Agency § 245 comment f (1950)). See *supra* note 5.

issues were too inseparable to permit a limited retrial. In considering a motion for a new trial, the trial judge must consider all the evidence and is not required to view the evidence in the light most favorable to the nonmoving party. *Rich v. District of Columbia*, 410 A.2d 528, 534–35 (D.C. 1979). The judge has discretion to grant or deny a new trial to prevent a miscarriage of justice, and a new trial does not require a retrial as to all the issues that were part of the first trial. *Lacy v. District of Columbia*, 408 A.2d 985, 990 (D.C.1979); *Munsey v. Safeway Stores*, 65 A.2d 598, 601 (D.C.1949); *see also Washington Gas Light Co. v. Connolly*, 94 U.S.App.D.C. 156, 214 F.2d 254 (1954). A limited new trial is appropriate, however, only where the issues in a case are separate and distinct and where certain of the issues have been fairly tried and determined. *Munsey v. Safeway Stores, supra*, 65 A.2d at 601. This court reviews the trial court's decision solely for an abuse of discretion. *Rich, supra*, 410 A.2d at 535.

The sole relevant case cited by appellant is a good example of a situation where liability and damages are too intertwined to permit a bifurcated trial. In *Munsey v. Safeway Stores, supra*, 65 A.2d at 598, the plaintiff sued for a trespass to personal property after she was stopped by a checker in a grocery store. *Id.* at 600. The checker, who suspected the plaintiff of shoplifting, took her packages from her, inspected them, and ultimately returned them to her. According to the plaintiff, her packages were taken "forcibly and against her will and she was caused great humiliation and embarrassment by the acts and words of defendant's employees." *Id.* According to the defendant, the plaintiff consented to the inspection and it was done in an orderly and mannerly way. Under these circumstances, special damages could only be proven by establishing that the manner and circumstances of the occur-

rence were greatly upsetting. Therefore the court stated that "in tort cases, such as this, where the issue of liability and the issue of damages are so closely interwoven, rarely will it be feasible to limit the new trial to damages alone." *Id.* at 601.[13]

In contrast, appellee sought to prove only the extent of his injury from the gunshot, the amount of treatment required, and the curtailment of his income over his lifetime. Although proof of his injury involved proof of mental illness resulting from the shooting, the circumstances surrounding the shooting do not affect proof of this illness. Similarly, the number of drinks taken by appellee before entering the laundromat and the abusiveness of his conduct do not affect the damages which resulted from the shooting. Since Judge Taylor's ruling that the issues of liability and damages are not closely interwoven is within the range of permissible decisions in the reasoned exercise of her discretion, *see generally Johnson v. United States*, 398 A.2d 354, 365 (D.C.1979), we find no abuse of discretion in the denial of the motion for a new trial on liability.

### IV. *Excessiveness of Verdict*

■ Finally, appellant contends Judge Riley erred in denying his motion for a new trial on liability and damages because the verdict of two million dollars was excessive. He maintains that since Judge Taylor granted a new trial on damages when the verdict was $800,000, due to what she characterized as an excessive award, and (in appellant's view) the sole difference in proof was the addition of $35,000 of medical bills, a $2,000,000 verdict is surely excessive, and "a product of sympathy, inflamed emotions and prejudice." He also argues the passion and prejudice were exacerbated because the second trial dealt only with damages taken out of context from the circumstances which led to the injury.

---

**13.** The other cases cited by appellant, *Perfect Fit Industries v. Acme Quilting Co.*, 494 F.Supp. 505 (S.D.N.Y.1980) and *Lacy v. District of Columbia, supra*, 408 A.2d at 985, are irrelevant to the issue of whether damages and liability were so interwoven as to require a new trial on both issues.

The decision whether to grant a new trial because damages are excessive is entrusted to the sound discretion of the trial judge. The trial judge must determine whether the award indicates prejudice, passion or partiality or was based on oversight, mistake or consideration of an improper element. *Vassiliades v. Garfinckel's*, 492 A.2d 580, 594 (D.C.1985), citing *Spar v. Obwoya*, 369 A.2d 173, 180 (D.C. 1977). This court will reverse the trial judge's determination only for an abuse of discretion. *Lacy, supra,* 408 A.2d at 988. This standard of review contemplates "close scrutiny" to determine whether "there is firm support in the record for a finding by the trial judge that the verdict is 'so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate,' given the respect accorded the judge's 'unique opportunity to consider the evidence in the living court-room context.'" *Id.* at 988–89 (quoting *Taylor v. Washington Terminal Co.*, 133 U.S.App.D.C. 110, 113, 409 F.2d 145, 148, *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969)).

Judge Riley found no indication of passion or prejudice in the course of the trial:

> Plaintiff's case was presented by able counsel at a very high level, with no attempt at undue eloquence or histrionics. All of the witnesses, including plaintiff, gave their testimony in a calm, deliberate fashion, without dramatization or obvious emotion.

The judge further concluded that the award was not excessive in view of the nature of appellee's injuries, his age, the likely permanence of the injuries, their continuation for eight years after the shooting, the likelihood appellee will be in pain for the rest of his life, his severely reduced capacity for manual work of any kind, and the drastic change in his personality. The record includes substantial evidence to support the judge's findings, which are not clearly erroneous. D.C.Code § 17–305 (1981). In addition, the proof of damages at the two trials was different.

During the trial before Judge Taylor, appellee did not submit his hospital and medical bills. His witnesses on damages were limited to himself, his employer's supervisor of finance management who testified about appellee's time and attendance pay records at the Government Printing Office (GPO), and a general surgeon who testified about appellee's medical condition after the shooting, the treatment which was required, and (although he was not a psychiatrist) about appellee's psychiatric problems as a result of the incident. In granting a new trial on damages, Judge Taylor referred to the need for corroboration and the absence of "what [are] supposed to be rather large bills—that it would be appropriate to introduce ... since that was a matter of concern to the court in determining the propriety of the jury's verdict." At the new trial on damages before Judge Riley, appellee presented ten witnesses in addition to himself, as well as attendance, pay, earnings and medical records. The witnesses included his former and present supervisors at GPO who testified about pay and attendance records and about appellee's potential for promotion or advancement during the balance of his employment, and an economist who calculated appellee's lifetime stream of earnings and testified about his impaired earning capacity. The medical records described, more fully than previously, the nature of appellee's mental illness and the course of treatment at George Washington University Medical Center.[14] We find no

---

14. We find meritless appellant's contention that admission into evidence of appellee's medical expenses of $35,000 was a miscarriage of justice. Contrary to appellant's position, the claim for medical expenses was not extinguished because Group Health Association, Inc., which had subrogated itself to appellee's right, failed to file a timely notice of appeal. *Jacobs v. H.L. Rust Co.*, 353 A.2d 6, 7 (D.C.1976) ("when a tort plaintiff's items of damages are reimbursed by a third party who is independent of the wrongdoer, the plaintiff may still seek full compensation from the tortfeasor even though the effect may be a double recovery"). Similarly, since appellee in-

abuse of discretion by Judge Riley in refusing to grant a new trial on all issues due to excessiveness of the second verdict.

Accordingly, the judgment is

*Affirmed.*

cluded a claim for these expenses in his complaint, and appellant has always been on notice that such a claim existed, we find meritless appellant's contentions that the statute of limita- tions had run because appellee made no claim for these expenses at the first or second trial, and that laches bars appellee from raising the issue now.